Mr. Fricks, good morning. Welcome to our court. We'd like to begin as soon as you can. I'm ready, Your Honor. Very well. Please proceed. May it please the court, my name is Rob Fricks and I'm here on behalf of the appellant EP Productions. We need you to keep your voice up, sir. Very well. My name is Rob Fricks and I'm here on behalf of the appellant EP Productions. Of course, I've asked and respectfully request two minutes for rebuttal at the end. Very well. While I believe the briefs adequately explain the position of EP Productions with regard to what we believe was some substantial procurement deficiencies, I think the focus on the amendments as they were drawn would probably be the best focus for the court this morning. Is it your contention that the contracting officer lacked legal authority to make such amendments? Your Honor, an amendment can be proposed, and let me answer it this way. An amendment can be proposed and should be proposed at the proper times, but an amendment made for improper purposes certainly can't be done. They've got to have a rational basis. There was no rational basis for the institution of amendments three and four. I didn't see in regulation .206 any limitation on the basis or the motivation or the purpose of amendments. It seems that that regulation allows the government to reassess its priorities, its requirements, and at any time before, during, or after solicitation to change the requirements. And the only mandatory part of it is that if they come to a different conclusion about what they do and don't require, they must amend the solicitation to so reflect. And, Your Honor, I guess that's the key point. Well, they did it here. They sure did. In the mandatory part of it they carried out, you seem to be arguing that .206, somewhere within it, requires some sort of threshold justification of a change in requirements. I don't see that. Where is that stated in the reg? Your Honor, I believe what the court just stated was that an amendment cannot, to change an amendment, there's got to be some sort of change in the government's requirements. And it's our position there was no change in requirements whatsoever. Let me ask you a question. This is a negotiated procurement. All right. And I've read other parts of the FAR, which it seems to me give very broad authority to the government to cancel the request for proposals and substitute an entirely new one. Am I misreading the FAR in that respect? Not at all, Judge. So they could have canceled this because if they'd been left with one entity with a qualifying bid, they could have just said, well, that's not enough. We want to cancel this. We want to have more competition. Let's start over. Absolutely. And that's what they should have done. Okay. So if they could do that, why can't they amend this solicitation? Because once you submit a solicitation, it's like if one of the judges was hiring a law clerk and they said, we've got to have certain qualifications and you've got to do these things. You've got to include a resume and you've got to include a law school transcript. You get to the point where you have three or four people that have basically qualified for the position and you realize, oh, my goodness, this one I really like, but he didn't include his law school transcript. Let's amend the contract. Well, we're not going to throw you out if you don't have that. We may throw you out if you don't have that. Well, that sounds as though you're saying that they can't amend it if they do it in bad faith. Correct. And is that the only limitation on their authority to amend? I think that once they solicit – yes, Your Honor, I think that there is a – and this court has several decisions on point with regard to the fairness of the procurement process. Okay. So bad faith is the only ground to limit them. What's the evidence here that there was bad faith? The fact that the solicitation requirements had not changed. What the government was seeking had not changed. How can you say that? It looks to be obvious that the government had a second thought about the degree to which the presence of a pillar in a conference room is going to seriously impede the conduct of the conference, and on its second thought decided pillars weren't that big a problem, and so they removed the requirement that the room be pillar-less. That sounds like a reasonable or rational conclusion and an actual change of view. Your Honor, you're correct with respect to that portion of Amendment No. 4, which was actually issued in June. Now, that's another thing, the timing of the amendments. The timing of the – No, no, stick with me here. Okay. Your assertion was they in fact had no change in requirements. And I'm suggesting to you that they did have a change in requirements because they rethought the extent to which pillars are a fatal problem, and they concluded that they're not a fatal problem, and therefore they accordingly amended the solicitation. Okay. Very well, Your Honor. We say, okay, we amend the solicitation with respect to that. Pillars are fine. There's another portion of Amendment 4, though, that's a problem. And that's a restatement of you can't have any attrition or cancellation language in the contract. You're cluing in offerors who have not complied with essential contract requirements by restating the same requirement three or four times. You're ushering in people, hey, make sure I'm going to direct your attention again. You're not complying, so you need to do this. What are you saying, that they're being too helpful by restating in an amendment a requirement that appeared previously and that somehow that makes the amendment illicit because it contains a reminder? Yes, Your Honor, I think so. When you do it three or four times in the same solicitation and it helps to usher in one particular candidate or one particular offeror that you want to give the position to. Well, look, if your real case here is bad faith in the sense that there was animus against your client or improper animus in favor of the awardee, then it seems to me that Judge Dyke is exactly right. Where's the proof? Now, as I understand it, this case was decided on cross motions based on the administrative record. If you want to make a case of bad faith or bias or fraud or something like that, it seems to me you need evidence and therefore you need a hearing. Now, when you agree by filing a cross motion for judgment on the administrative record, you're giving up the opportunity to produce evidence of bad faith. Your Honor, we requested at the Court of Federal Claims, because at the time it was in conjunction proceeding, we requested a motion to supplement the record by having a hearing, by being able to depose the contracting officer, by being able to depose other integral parties. That motion was denied. As part of this injunctive proceeding that preceded us on the fast track, we had no choice. This is from the TRO, I guess. Correct. And so at this point, the remedy we're seeking is not the TRO. The contract's already occurred for one year. Where do you argue in your brief that the refusal to let you have a hearing and the refusal to let you depose the contracting officer is an error which should lead to reversal? Your Honor, I believe that what I included is just a simple we appeal the decision and the decision had already been made. But where do you argue in your opening brief that we should reverse because of the refusal to let you depose the contracting officer? I don't think that's specifically argued in the brief because I believe that that was decided about that point and perhaps it should have been included. However, I think that the record is sufficient to show the bad faith and I think that we've laid out the facts sufficient to show it. We can start from the very beginning, Judge. The very beginning, the solicitation's issued. Now keep in mind that my client is the incumbent contractor. And as such, they've performed the job for several years. They submit their proposal. At the time they're submitting the proposal by the agency's own admission, they are the only offeror that's in compliance. There's a panel that's assembled that listens to oral arguments from four different competitors. Those four different competitors go to oral arguments and there's a three-judge panel or three-person panel to make recommendations. Well, when that recommendation of that panel is to, looking from the score sheets, you can clearly see it. We're going to give E.P. Productions the contract. That's the recommendation. Amazingly, and all of a sudden, there's the appearance of Deborah Griffin, who is the contract specialist who's been interacting with all the offerors from the beginning, which is a no-no. You're not supposed to interact with panelists, but yet this person is put on the panel. Well, wait a minute. What evidence do we have that there's some kind of improper communication between the official you named and other offerors here? See, in the record, all the proposals were evaluated in oral arguments and they were part of the proposals, and I don't believe the actual C.D. But the point you made was that one of the officials for the government here had improper contact with your firm's competitors. I'm just saying that the person who was designated as the contract specialist, who is typically a person who communicates with all the offerors throughout the process, suddenly was on the panel. Well, is there something illegal about that? Absolutely, because the panel members— But law is violated by an evaluation panel member being a contract specialist. There's no specific law that says you can't do that. Again, Your Honor, I mean, Judge, we're falling back on that there's got to be some sort of inherent fairness in government contracting. Otherwise, nobody's going to want to contract with the government. You might as well just pick the person you want to deal with and deal with them. The evaluation board doesn't have any decisional authority anyway, does it? Under the way this particular solicitation was drawn, there was going to be three parts. The threshold requirements, which my client was the only person to pass the threshold. Am I incorrect that the evaluation board only makes recommendations? They do make recommendations, but they make— The decision is made by the contracting officer. The decision is made based upon the recommendations. The only time that the— Well, based on many things, not only the recommendations. Right, but my read of the way this solicitation was drawn is that the contracting officer is going to go with what the panel says unless the panel is deadlocked. And that therein gives rise to the fact that Debra Griffin, the contract specialist, appeared on the actual panel that ended up deadlocking the panel, which kind of gets me back to the— In what respect was the panel deadlocked? I don't follow. Well, the panel was deadlocked with respect to the board presentations. My client received excellent, excellent, excellent pass throughout the whole process, the three stages of the process. After the fact, after everything had already gone through, the contracting officer, Jackie Robinson Burnett, went back and changed the oral scoring to good instead of excellent, dropped it down two points. In doing so, that resulted in my client not receiving the award. Now, the justification for her going back and reviewing the panel results was that my client had not offered a good explanation of the financial capabilities of EP to perform the contract. And we believe that that is completely inaccurate. For the past five years or ten years that they've been involved in the contract, they've always fronted money to get it done and then collected all the money at the end. In this particular situation, under the new contract, there was an interim payment schedule. The interim payment schedule will call for you to receive payments in different intervals. When asked about the financial aspects of the proposal, my client simply stated, we can handle this because in the past we've always just gotten one lump sum at the end. This is actually a treat for us because we're going to be receiving money on an interim basis. But even if we had to go back to the old way, we've always done it. We can do it again. We can come up with all the money necessary to be able to pay. Well, if the financial power or stability of your client was so clear, then how could the contracting officer have downgraded the oral presentation rating on the concern over financial instability? She couldn't have. So are you suggesting fraud? Malice and fraud, exactly. Well, the problem of asking the Court of Federal Claims or this court to infer fraudulent intent conduct from a paper record, which is all we have here. Your Honor, it's like I said at the Court of Federal Claims below. If you look at the whole record and you look at everything, we're not able to get to the deposition. We're not able to nail her down on this. But if you look at the whole gamut, I said when there's smoke, there's fire. And, of course, the judge at that time or later said not always, but there is. You have a situation where there's so many little things throughout the record that you have enough to infer that there was some bad faith, that there was some irrational decision-making, that there just simply wasn't enough. I mean, there was enough to sustain the protest and at least cancel it and start it over. I see that my time is up. What is the current status of it? Is it a multi-year contract that's run about one year? Yes, Your Honor. What we have here is the contract was to commence, I believe, in 2005. There's a 05, a 06, and a 07, and a 08. Because the same hotel has utilized for the contract over two-year periods, they just basically awarded the contract as a four-year contract or a one-year contract with three renewable options. So the relief you're seeking, in effect, is to substitute your client for the awardee for the next several years?  The options were renewable at the option of the government? That's correct. So you really, even if you'd gotten the award, you wouldn't have to write for more than the first year? That's right, but we also would have to… You've asked for bid preparation costs? Absolutely. What would that come to? At this point, well, at this point, considering what we would ask for in terms of fees and costs, that would approach approximately $150,000. Pardon, I couldn't hear the question. $150,000. $150,000. All right. Ms. Burke. May it please the Court, SDDC's award to Ask Associate should be sustained because it is not arbitrary. Have you read the administrative record? I have, Your Honor. In its totality? Yes, Your Honor, I handled the case for it. How long is it? How long is the record? It's four very, like, three-inch binders thick. And you've read it all? Almost 5,000 pages. Yes. Very good. Okay, well, given your familiarity with the record, maybe you can help me with my question, which is, you say repeatedly throughout the brief that UT was also disqualified from the facility trial because their rooms had pillars, and I can't find a citation and record that supports that. Where is it? Sure, Your Honor. On page 5116 of the Joint Appendix, this is EP's original facility information sheet. 5116? 5116, yes. It's in Volume 2. Okay, this is EP's original facility information sheet. Now, the handwritten notations are notations that were written by the agency, but Presidential Chamber A and Presidential Chamber B have pillars. Now, EP is represented on this sheet that they do not have pillars. What occurred was after the second round of offers came in, the contracting officer noted that both EP and Ask Associates had proposed these two rooms. Ask Associates noted that both of these chambers had pillars, which is the primary reason for Amendment No. 4 to bring both EP and Ask into compliance with the terms of the solicitation, allowing them to explain why pillars would not be obstructive and relaxing. Apart from this sheet, where do I find that they were rejected because they had pillars and didn't satisfy the facility requirements? They were not rejected because they didn't pass the facility requirement. What we stated in our brief was that they could have been rejected had the initial evaluation gone as it should have. EP, as well as all other seven offerors, should have been rejected. Did the Court of Federal Appointments make a finding about that? I don't believe that the Court did, no, Your Honor. Okay. But it goes to the issue of prejudice in particular because even if the Court concludes that there was some kind of error in the procurement process, the agency could not have awarded to EP without having brought them into compliance through Amendment 4. The opposing counsel argued, Ms. Burke, that but for the contracting officer's re-rating, I'll call it, of the oral presentation, that they would have got the contract. So he's directly asserting that but for the reduction in the assessment, evaluation of the oral presentations that they would have won. Do you agree with that assignment of causation? No, Your Honor. As I said, but for the agency's amendment, even assuming that the agency's amendment was somehow faulty or incorrect, at the end of the day, EP's offer contained multiple problems. First, at the end of the process, the agency determined that EP's rooms contained pillars, and that was a deficiency. The agency could not have awarded until that deficiency was somehow rectified. And second, EP's offer contained other weaknesses that were addressed during discussions. So even if the agency… Weaknesses addressed during the oral presentation phase? Weaknesses addressed during the discussions that occurred after the oral presentation phase. But those could have been corrected, right? And they were corrected, Your Honor. Yeah, they were corrected. So there isn't any reason, apart from the facilities problem, that EP couldn't have received the award, right? Well, except for the sort of overarching problem that EP's offer was several hundred thousand dollars more than the offer that eventually… But if they were the only qualifying bidder, as long as they were qualified, they could have been awarded the contract. It may be that the agency could have re-bid the whole thing, as I was suggesting earlier, or amended it or whatever, but there isn't any reason they couldn't have received the award as long as they were qualified, right? If they had rectified all of the deficiencies, then they could have received the award, Your Honor. However, the agency's overarching goal of obtaining the best value most likely would have led it to… I don't understand. You're saying they didn't have to accept it. I'm just saying there wasn't anything wrong, apart from this handwritten notation on here. There isn't any evidence in this record that EP couldn't have received the award. Well, that's actually not true, Your Honor. If EP had… If the offers had been evaluated initially correctly, the agency would have eliminated EP for having pillars in its room. But how do we know that? All you've shown me is a handwritten notation where somebody has written pillars on there. Is there any testimony that they should have been disqualified because of pillars? There is no testimony in the record, Your Honor. However, EP does not contest this. In fact, after Amendment No. 4 was issued, EP submitted a revised offer which removed one of the rooms with pillars. EP is well aware that it proposed a deficient facility and has not contested that it did so. Could you address the financial instability point? I had understood that a huge factor in the mind of the contracting officer was that there were indicators that EP was financially unstable and therefore might well not be able to perform the contract if they were the awardee. But I'm trying to understand, what was the foundation for that belief to the extent that was the belief of the contracting officer? Well, first of all, Your Honor, although the contracting officer was not one of the evaluators on the panel of oral evaluators, the contracting officer was present. So she's not actually on the panel, but she was there and taking notes and paying attention. I'm really asking, what is the evidence that the firm was financially volatile and might collapse or couldn't front the money? Well, EP's actual statements during the oral presentation demonstrated that they were having difficulty obtaining the initial capital, which was I think a couple of hundred thousand dollars, to begin the project. And we have quoted that in our brief and it also appears in the contracting officer's declaration. The entire statement is on a videotape that is part of the original administrative record. Now, we did quote it only partially, and hopefully that was apparent to the court because we demonstrated that parts were omitted. Specifically, EP stated that we can come up with a couple of hundred thousand dollars if we had to, that's the quote, but that it wasn't an ideal situation. Also on page 3,145, we have the beginning of the original evaluations. So, for example, we have the first evaluator stating, I was not satisfied with Ms. Porter's financial statement. A few pages later, Financial statement meaning something she said orally or some written document? No, something that she said orally. In fact, part of the problem was that she did not submit written documents, she just made oral representations of her ability to perform the contract. And as the evaluation plan states, summary representations are not enough. How much upfront money would have been needed under the new solicitation? Well, according to Ms. Porter's statements, she would have needed an additional couple of hundred thousand dollars, which I take to mean $200,000. No, but I'm referring back to the argument that Mr. Fricks made, which was in the past, the whole year's worth of conferences where the money was fronted by the contractors and that the terms of this contract, rather than requiring 100% fronting,  because there were apparently periodic payments. So he was making the argument, of course, that it would be even easier under the new contract for EP to finance it than it had been under the old contract. And so what's your response to that? My response is that it directly contradicts EP's statements. EP demonstrated concern that it did not have the startup capital to begin this project. Even though that amount would be less than in every prior year. That's correct. A couple hundred thousand dollars is only a small fraction of the overall contract price, which is roughly $2.5 million. But nevertheless, she didn't have it, and she said as much. Additional notation of this deficiency appears at records 3156, where another evaluator in the middle of the page under weaknesses, among other concerns, demonstrates that she is also concerned about EP's financial ability. Where is that? It's awfully hard to read. There is a lot of writing. How far down the page? Under weaknesses, there's a line, and it's just underneath that line. Thank you. The important thing to remember is that the evaluation that EP received for its oral presentation was good. It wasn't unsatisfactory. It wasn't really anything unreasonable. And good, as defined by the contract, means satisfactory with some doubt. How many people were on the evaluation board? Well, there's two boards. There's the oral. The oral board. I believe three. Three. That's correct. And what were the ratings they gave? Two excellent, two very good. That's four. I'm sorry. Three people with four ratings? I apologize. Four. Two excellent. Four people on the board. Two excellent, two very good. Yes. But the contracting officer canceled both of those pairs of evaluations and inserted instead the final grade one step further down of merely good. That's correct, Your Honor. And she did so under the authority of the source selection guide, which requires her to consider the findings of the evaluation panel, but also requires her to make an independent judgment, even if that means changing the decision of the evaluation panel. She actually couldn't do anything with the evaluation panel because you need a consensus. And if there's not a consensus, you can take a majority under exceptional circumstances. Here, we didn't even have a majority. So she absolutely made the correct decision in going back and just re-evaluating it using the original notes and using her own personal observations gleaned from the oral evaluations. And then you said there was a second evaluation board. I didn't quite follow that. One that heard the oral presentations and the second board that did what? They evaluate the rest of the factors for the contract, meaning technical ability, past performance... Is that in dispute here or not really? No, Your Honor. The other board, the technical board? No, Your Honor. At least not by us. Is there some independent evidence of financial instability? I mean, do we like have their bank accounts and they don't have any money in their bank accounts? No, Your Honor. We don't have any independent evidence because EP didn't produce its statements and that's precisely what the other offerors did do. Sorry, bank statements. Pardon? Bank statements, letters of credit, things of that nature. Doesn't the government routinely require some sort of financial statement to verify the solvency of an offeror? Yes, Your Honor, which is precisely why... Did EP not submit such a financial statement? Not that I'm aware of, Your Honor. Wouldn't that be an automatic disqualification? Well, financial stability is one factor... Your Honor, stay with me. I'm saying a financial statement, a formal kind of document. My question was, are the offerors in this case all required to submit, among other things, a financial statement? Pursuant to the terms of the solicitation, I'm not aware that they are required to submit that. What they are required to do is demonstrate their financial stability in the oral presentation. And that is one factor. That sort of sounds like an oxymoron. I don't understand how somebody can demonstrate financial stability in an oral presentation. If I'm the president of the offeror company, I stand up and say, our finances are great, and that's accepted by the government? Well, no, Your Honor. What happened with respect to the other offerors is that during the oral presentation, they discussed their financial stability and produced documentary evidence to support their statements. But EC produced no documentary evidence? That's correct. And made self-condemning oral statements? That's correct. For these reasons, Your Honor, we respectfully request that the Court affirm the decision of the trial court and the award of the agency. Thank you, Mr. Frick. Rebuttal? Your time has expired, but we'll give you two minutes to respond to anything that was newly raised. Thank you, Your Honor. With respect to self-condemning language, it's just not in the record. The language was just, Your Honor, posed the question, can you handle this? Of course we can. Before, we had to come up with it all. Now we have to come up with a couple hundred thousand dollars. Not my perfect idea, a perfect situation, but we can do it. You look through the proposals of the other offerors, there's absolutely nothing on the record anywhere where anybody submitted anything with respect to financial ability. So, to the extent that that's an issue, that should be a non-issue. The scores were unilaterally changed without a rational basis, and in doing so, it precluded my client from receiving the award. There are no pillars out there. Okay? There's some Mooseburg suggestion that you admit      And let me give you an example. One of the things that we did, and I'm going to give you an example, but I'm going to give you an example One of the major deficiencies that was identified in the letter that was sent out to all of the offerors, every one of the offerors had fatal deficiencies with the exception of EP. EP didn't. EP concerned the certification of a Cisco or Microsoft certified guy and the presence of the T1 line. The presence of the T1 line at the symposium was an issue that they raised. This is a problem. Well, it was in the original solicitation and actually an original bid. EP said, hey, we're giving you this. It's a done deal. So instead of going through that, EP just changed the rooms when it came down to the pillars issue. The point is is that this solicitation was produced or put out to everybody. It was extended. There was amendments that were guiding and correcting after the fact that were proposed in bad faith and resulted in my client having a substantial loss. And for that reason, we would ask that this court would simply reverse the order in the alternative award bid cost and force a submission.  Mr. Frick. Thank you, Mr. Burke. The case is taken under submission. Thank you,